Good morning, Your Honor. This is Raul Montes for Mr. Josue Mariscal. I'd like to reserve a couple of minutes, Your Honor, for the rebuttal. Thank you, Your Honor. In this case, Your Honor, Mr. Mariscal made an entry back in February 19th of 1997 because at that time he was not in INS, now the DHS, and therefore, he should be in deportation proceedings rather than exclusion proceedings. At that time, he was free from actual or constructive restraint, so therefore, under the matter of stances, he would be considered to have made an entry into the country at that time, and for that reason, Your Honor, he should be deemed, as at that moment, to have entered the country. Now, the reason that's important, Your Honor, is because there's several benefits to being in deportation versus exclusion proceedings, one of them being the right to bond, the right to a bond hearing in deportation and not so in exclusion. Well, counsel, he's still in the country, isn't he? Yes, he is, Your Honor. He's got to stay, right? Well. Is he on a stay right now? But that's pursuant to the court, Your Honor, yes. Yeah. What judge signed that order? Did a judge sign that order stating it? Did a judge ever consider it? Well, at that time, Your Honor, I believe that that was an automatic stay. That's not what the statute says, is it? You had to make application. It wasn't automatic. Didn't you apply for a stay when you filed your petition? Yes, we did, Your Honor. Okay. So it's not automatic. So what judge considered that? Was there a hearing? Well, that was through paperwork, Your Honor, we did. What did you do? We filed a petition for a motion for stay. All right. Did you get an order? We did, Your Honor. Was it signed by a judge or a panel? I'd have to refer it to the record, but I believe it would have to be either a clerk's order pursuant to the court. You mean some judge directed the clerk to sign an order? I'd have to look at the paper, Your Honor. But as I understand it, that ---- Well, maybe the government. Can you help us? That stay. Who signed the stay order? Your Honor, I don't have the history before me. Well, I have a few questions for the government, too. Yeah. But I'm just asking counsel here. I can't find it. I find a file here that some staff attorneys considered the matter. And what I'm getting at is what are the grounds that you asserted for keeping him in the country after the BIA had directed his deportation? Yes, Your Honor, in my motion for stay. And also, I have a ---- the motion was not opposed by the government, by the way, Your Honors. Okay. Those are questions I have for the government. So it's an unopposed order. Yes. They didn't even defend against this motion that you made, right? That's correct, Your Honor. Okay. And basically ---- You didn't sign a stipulation with the other parties agreeing to this stay, did you, and submit it to the court? This is your motion, and your motion ---- the merits of your motion are going to rise or fall on what you submitted. The government says we're going to stay out of it, right? That's correct, Your Honor. Okay. That's right. Now, why did you say that he had a right to stay? Well, we ---- our first argument was that the BIA had clearly erred in severely dismissing the case, and then ---- So if there's any kind of mistake made by the BIA, that's grounds for a stay? Is that what Congress said in the act? Well, Your Honor, basically, I believe this is one of the first motions that was ---- that we did in our office back in the ---- let's see. Well, let me ask you this. If we go through this whole argument today and the panel concludes that the BIA was correct in what they did, should we now lift that stay so that he can be deported immediately? Is that our obligation? Or do we have to wait for an opinion and wait for the mandate to go down 30 days after we file an opinion? I would say, sir, Your Honor, that we wait to wait for a mandate. We wait for the mandate? Where does the statute say that? I don't have the authority, Your Honor. I mean, that's the way you would prefer to have it. Yes, that would be a purpose, yes, Your Honor. I think I understand your position. Yes. Thank you. In addition, Your Honor, the evidence submitted by the government, and here the evidence is all, we would say, interrelated. Obviously, the most damaging evidence was the testimony ---- well, not testimony, but was the alleged interview of Officer Padilla, who was by the time of the trial deceased and who did not record his apparent interview, assuming it was an interview of Mr. Mariscal, and apparently it was witnessed by Officer Thorpe. And in that case, obviously, there's no foundation to introduce that document. Well, I have another question for you. Yes, Your Honor. Do you, at the hearings before the IJ, do you bear the burden of proving your case? Your Honor, it ---- By testimony and other evidence? No, Your Honor. You don't? Does the government bear the burden of showing that he's deportable? The ---- in exclusion matters, the Respondent has to establish that he is a lawful resident first. And if he establishes that he's a lawful resident, which he ---- in this case he did because he had a green card. A lawful resident is an alien card. Once that's established, then the burden shifts to the government to establish that he is excludable from the country. And so by the time that the government was introducing the evidence against Mr. Mariscal, at that point, it was the government's burden, not the Respondent's, to establish that he had, in fact, attempted to smuggle six aliens into the country. In addition to that, Your Honor, the descendant order, we have the ---- Now, then he left the country voluntarily, right? Yes, he did. And then he reentered. Yes, Your Honor. He wasn't ---- he didn't have documentation on reentry? Well, that's an interesting question, Your Honor, because he made a claim, a false claim, admittedly so, to United States citizenship background. But what's the burden of proof on that? He claims citizenship, right? Yes.  He would have the proof. Since he's coming into the country, he's knocking at the door. Yes. He got established that he's either a citizen or a lawful resident alien. Yes. And ---- He couldn't prove either one. Oh, yes. He did establish the ---- that he was a lawful resident alien. That's why the government decided to ---- Can you give that up when he left the country? At which point, Your Honor? To reentry, right? Well, the ---- he was stopped at the port of entry on May the 16th. On May the 17th, the notice of exclusion was issued. After that, he made a departure and he came back with his green card, and his green card was lifted at that point because he was allegedly excludable. But the only notice of exclusion, the Form I-122, is the one issued back on May the 17th, 1995, Your Honor. Now, he had a smuggling problem, right? Yes, Your Honor. It was alleged that he was smuggling the six undocumented aliens. But it's entitled to stay in the United States as an alien smuggler, right? Well, Your Honor, all the facts are agreed by the government, as stated by the immigration judge, are agreed by the Respondent and the government, except one, knowledge. And that was the ---- Well, he didn't know that he was smuggling aliens in? Well, Your Honor, based on what the record shows, we would say that the government has not established Mehta's burden of proof. Okay. The government proved that he had aliens and brought them into the country. He was a smuggler of aliens, right? The government has proved that he knowingly brought aliens into the country. Okay. Under all the circumstances, the I.J. found, as a matter of fact, that he had knowledge, right? That's correct. That's what the I.J. found. He went to the BIA and they didn't give you any help, so here we are, right? That's correct, Your Honor. And our ---- And you're having a good time this morning. Okay, Your Honor. Thank you, Your Honor. No, no, no. Wait a minute. Oh, I'm sorry. I said you're having a good time. Oh, oh, I'm sorry. I saw the clock and ---- We don't grant any reprieves here. Yes, right. I see my time is almost up, Your Honor. We'll give you some time to worry about it. Oh, thank you. We give lots of time. All right. I appreciate that. Anything else? No. Not right now, Your Honor? No. Thank you, Your Honor. No, you just made it. Right out of the clock. Thank you, Mr. Roberts. Thank you. Give us some time. Give us some time. All right. Good morning, Your Honors. May it please the Court. I'm Teresa Healy, and I'm here to represent the government in this matter. Can I pursue some stay matters with you preliminarily? Sure, Your Honor. When the government makes none or makes no objection to the Petitioner's request for stay, that doesn't mean the government's consenting. It probably means the government's so busy, you don't have time to cover all of these, doesn't it? Is that what's going on? I can't answer for you. Well, all right. In the cases you're familiar with, have you done a number of immigration cases? First one. This is my first case for oil. Yes. She has plausible deniability. Are you aware of any case where the alien has not been granted a stay under the new rules, the new statutes? Your Honor, I haven't done enough cases to really be able to fairly answer that question. Nothing in CLE or your training that would alert you to stay away from stays you're not worth bothering with or anything like that? I've never been told that. All right. Go ahead with the case on the mirror. Your Honors, I believe there are two issues before the Court in this case. And the first issue is whether the Petitioner, in fact, made an entry into the United States following his immigration hearing in February 1997, if and when the Immigration and Naturalization Service failed to issue a piece of paper to him extending his parole. And the second issue is whether the immigration judge violated Petitioner's rights to due process by admitting various evidence in the form of documents and testimony. And I'll address each of these issues in turn. I just wanted to start out saying that under the law in effect at the time that Mr. Mariscal attempted to enter the United States, there were two types of immigration proceedings. There were deportation proceedings, and those applied to those who were physically present in the United States and had made an entry, whether by inspection or by evading inspection. And the second type of proceedings were exclusion proceedings, and those were for individuals who were apprehended before they entered the United States. In essence, they were knocking at the door of the border, and before they were able to come in, they were stopped by the Immigration Service and placed in exclusion proceedings. And this is the type of proceedings which apply to Petitioner. When a person is in exclusion proceedings, the Attorney General at the time of Mr. Mariscal's stop, he had the authority or discretion to parole somebody into the United States, which enabled them to remain inside of the United States without having formally entered. It's a legal fiction that exists, and it's an administrative advice that exists so that the person can remain inside of the United States basically while their immigration case is litigated. Alito, we understand the concept of parole. What struck me as somewhat odd was the service's practice of extending the parole for fixed periods of time by literally issuing a piece of paper to the alien saying your parole is now extended for two months until your next hearing. And if I understand Mr. Montes' argument, that's fine if the service wants to do it that way, but at some point the service stumbled and forgot to give him an extension, and therefore his argument is that the parole by its own terms, which was limited in time, expired, and at that moment in time he effected an entry into the United States. What's your response to that? However, the parole statute, the parole regulation and case law does not support his position that just because a piece of paper is not given and parole is in effect terminated equates or means that an individual makes an entry into the United States. Rather, the statute, the regulation and case law all seem to indicate that if parole is terminated and expires, that the person remains an applicant for admission into the United States and that the government can proceed against them in an exclusion proceeding and that they, just because the parole status is terminated, does not in effect give them a right to be placed under deportation proceedings. I don't know if you would know this, but then what's the purpose of giving them these fixed extensions of parole if under the statute, once you give them notice that we are placing you in exclusion proceedings, and then as I understand your argument, until those proceedings are completed, the person is in law still in exclusion status, if you will. Why did the service even bother with these pieces of paper? It just kind of muddies the water, doesn't it? Well, it just, I think, was an administrative practice that existed to sort of put the person on notice of the fact that they had the parole status. Are you telling me because you know that or are you just kind of speculating? Because my understanding of the record was that it was so that if he were stopped by a border patrol officer or an immigration inspector, he would have something to present to an official to show what his current status was vis-à-vis the immigration laws. Did I misunderstand that or? No. However, I don't believe that the statute, the cases or the regulation support that just because you don't have that piece of paper means that you've infected an So is your answer to my question, you're not sure what the purpose was of this permit system? Well, they're just trying to be nice. That's all. We all know what a big heart the INS is. Your Honor, I guess my answer to the question is I don't know the exact reason for that, but it was a, the agency decided that that was the way they wanted to. So your point is whatever the agency did by virtue of bureaucratic paperwork, the law, his status under the law never changed? That's correct. Okay. And counsel attempts to state that an entry was made under the Board of Immigration Appeals decision matter of Sanchez. However, that case is really inapplicable here. That's a deportation case. The only similarity in that case was that the individual was stopped at the border and by officials and he was taken into custody and at that point did not make an entry into the United States. However, the next day I believe he was released. He was not placed under any immigration proceeding, exclusion proceedings or deportation proceedings. He was released into the United States so that he could face criminal charges and therefore he was under no reach of the immigration laws at that point. Counsel, if we agree with the government's position, should we enter an immediate order lifting the stay? Because all the statutory criteria for the granting of a stay are pretty much evaporated once we've made up, we come to a conclusion that the government's position is correct, isn't it? Yes, Your Honor. Would the government act on that stay, lift and deport or not? You don't know. I just want to know if you don't know. To speak for the DHS, I don't know how immediately that they would enact the order of exclusion or deportation. What happens? They issue a baggage order? Your Honor, I currently don't know what type of mechanism or how they would exactly proceed in this particular case. I think they proceed on a case-by-case basis. Well, what's the government's position? Do you want the stay to stay? Do you want the stay to remain in force or do you want the stay lifted? Well, of course the government would want the stay lifted should the court find for the government. Well, do we have the authority to lift the stay that's been imposed by the INS? By whom? No, that's not who granted it. I thought it was our stay. Isn't it our stay? It's in the Ninth Circuit stay, yes. Oh, it's our stay. Yes. Who did that terrible thing? Staff attorneys. Well, you probably have a rule on that. Well, the stay says that it remains in force until the court otherwise directs. So I'm asking, should we direct or not? I would say that if the court rules for the government, then stay should be lifted, yes. Then there'll be a field of the Supreme Court that may reimpose the stay. Yes. If there was an appeal to the Supreme Court, yes. How many of these are they going to hear? I have eight this morning for them. They have a choice. Pick anyone they want. That's up to them. The other issue I wanted to discuss this morning was the due process issue. I believe that in this case the immigration judge acted in accordance with due process. All of the evidence that was admitted by the court in this case meant the requisite test. It was both probative of Mr. Mariscal's engagement in alien smuggling and it was fundamentally fair. And I just wanted to distinguish the case of Murphy v. INS from the present case cited by Petitioner in his reply brief. In that case, the court found that it was fundamentally unfair to admit into evidence the form I-213, and the basis for the court's finding was that the Immigration and Naturalization Service failed to produce witnesses to lay the foundation for the statements made in the I-213. In this particular case, in contrast, the Immigration and Naturalization Service presented three witnesses, all having direct knowledge to the events in the case of Mr. Mariscal to lay a foundation. They were subject to cross-examination. That was very extensive. And moreover, the evidence that was admitted into the I-213 and sworn statements was given to Petitioner in advance, and he had a chance to review this evidence and to make objections. And I'd just like to wrap up, if nobody has any other questions for me, Your Honors. The immigration judge's decision finding that Mariscal was properly in exclusion proceedings and that the government proved by clear, convincing, and unequivocal evidence that he knowingly attempted to smuggle six undocumented women across the border should be affirmed. Is there evidence that he was paid? Refresh my memory. Pardon me? Is there evidence that he was paid? Do you have money for doing this? He was, when he was apprehended by the immigration officials, he did have a fair amount of cash on him, I believe over $1,000 in cash on his person. Okay. $1,798. Yes. According to the I-213. Yes, that's correct. You know, we've got everything up for the leader. Thank you, Your Honors. Is this your first appellate argument? Yes. Thank you very much. Congratulations. You did a nice job. You are now a combat veteran. Thank you, Your Honors. The government will submit. Thank you. Ms. Healy, I do have one suggestion for you because I know you're new at this, and I know that they frequently ask you to cover other people's cases because you're coming out here to do other arguments, but we really do rely on counsel for both sides to thoroughly know the record, and it's helpful if you have the administrative record with you so that if you get questions like you did this morning, you can respond to them. Okay. Thank you, Your Honor. Thank you. Your Honor, just a brief point. Regarding the money that he had in his possession, he also, at the time of the court hearing, produced a letter from the Home Depot that he was going to do a transaction with the Home Depot for a certain amount of money, which would cover that money that he had as a possession. So it wasn't something that he had. He was going to buy something? I believe, Your Honor, yes, he was going to buy something. He was either repairing, doing a remodeling at his home or one of those situations, but it was enough to cover the transaction with the Home Depot. The other thing is what? He wasn't going to buy a new gasoline tank, was he? No. Well, Your Honor, if the prices keep going up. Your Honor, as far as the factors for a stay of removability at this point, the likelihood of success, the court can answer that. But I would say that we would argue that he does fit that qualification. The importance of the questions raised by Mr. Mariscal, the irreparable injury, because if he is, in fact, excluded from the country, then there is no way that he can. Counsel, the standard that's been adopted by the Ninth Circuit is not necessarily the statutory standard. And under our General Order 6.4, we're looking generally at the injunction standard. And that's a weighing test. And I'm thinking, coming on the bench this morning, that we're never going to know more about this case than when we get through with your argument and we go back into the conference room to discuss this case. We've had an opportunity to read your briefs. We've listened to your argument. We've had an examination of the IJ record. We have done some in-chambers research and briefing. And at this point, unless this case takes some crazy turn someplace down the line with another case from the Supreme Court or research or something you call to our attention late that changes the course of it, we're pretty much on course to write an opinion or a disposition. It may be a memorandum disposition or it may be a published opinion. I don't know at this point. But we're pretty geared up at this point. And I'm saying, what in the world are we keeping this stay for? The balance will tip when — I don't know what my other two judges are going to say. They may disagree with me or I with them. But once we cohesively as a panel come to some kind of a resolution, it seems to me that if the — we are to rule in favor of the service, then the stay should be lifted. If we were to rule in favor of your client and send us back for a rehearing or some other matter that bothered us or the law has changed, then you're going to prevail and I'd leave the stay in place because there's no reason to send him away. He's going to probably win and stay here and get citizenship sooner or later. You see what I mean? Yes, Your Honor. We would say, Your Honor, that reasonable minds can differ, Your Honor, and if a — Well, but sure. We may have a 2-1 panel, but we're going to be of a mind to do something. Yes, but if a writ is filed with the Supreme Court, then the Supreme Court — The Supreme Court can grant you another stay if you can show just cause for it. I'm sure you could because the Supreme Court's not going to take it unless you've got some horrendous problem that needs addressing on a national basis. I guess, Mr. Montes, what — Montes. Montes. The issue that's troubling me is that it seems that Congress has essentially changed the presumption in IRERA and has essentially said that at least for permanent rules cases, you can continue to litigate your entitlement to relief even if the alien is removed from the United States, whereas as I understand the law in the pre-IRERA context or even in transitional rules cases, if the alien is removed, then he loses the opportunity to continue prosecuting his petition for relief. So given that change in the statutory standard, to follow up on what Judge Beezer was asking you about, doesn't that change the standard that we ought to apply in determining whether to continue injunctive relief that we have issued to preserve the status quo? Well, Your Honor, I believe if you get into the factors of the — that may affect the irreparable injury factor or the equities factor, but I believe the other — That answers my question. I mean, doesn't it? I mean, clearly in the old rules case, if you had the Hobson's choice of stay in the United States, as long as you're still here, you can pursue relief, but if you're removed, you've lost your entitlement — That's correct. — to litigate. Congress has now taken that irreparable harm away by saying the alien may continue to litigate his claim for relief. He just can't do it remaining in the United States if the BIA has ordered him removed or deported. Well, Your Honor, but I still think as far as the effect of him being able — Well, there's no question that it makes it harder. I mean, we've all represented clients in foreign countries, and it's harder to do. There's no question about that. But Congress presumably understood that when it changed the rules and said, that's the way we want you to do it. Yes, but it's still, I believe, the same standard, Your Honor, applied in either case, and I believe that — I guess that's the question I'm asking you, because it seems to me that it's still the same standard. It seems to me the standard has changed. I don't believe so, Your Honor. It's just, you know, as far as I see, it would be the same standard. Are you familiar with Section 1252f2 of the statute and the standard that's expressed there? It's a clear and convincing evidence standard. That's a pretty heavy burden to bear. You know, that's one down from the criminal standard. It's the fraud standard. Yes, that would be between the two. That's the language that Congress uses. And you want me to apply equity after Congress directs specific language be applied? I don't know if I'm at liberty to do that. But, Your Honor, I believe this case would satisfy our position. That's fine. That's the argument. If that's — if you feel strongly about it, I'm certainly willing to listen. But I'm going to consider the record and I'm going to consider the result. And when we take it under, if it's submitted, we'll take it up? Yes.  Thank you, Your Honor. Thank you. Thank both counsels here. Thank you very much.
judges: Pregerson, Beezer, Tallman